**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Rahman Akin,

Petitioner,

v.

Eric Rokosky, Warden, Eloy Detention Center,

Respondent.

No. CV 26-02863 PHX SHD (CDB)

**REPORT AND RECOMMENDATION**
**A 241 560 260**

**TO THE HONORABLE SHARAD H. DESAI:**

Petitioner seeks relief from detention pursuant to 28 U.S.C. § 2241. The petition is fully briefed and ready for the Court's consideration.

**I. Background**

Petitioner filed a pro se § 2241 habeas petition on April 24, 2026. Petitioner is currently represented by the Phoenix Federal Public Defender's Office. (ECF No. 17).

Petitioner is a native and citizen of Afghanistan, who entered the United States under the Operation Allies Refuge ("OAR") program. (ECF No. 1 at 6, ECF No. 13 at 1; ECF No. 19 at 1-3).[1] Petitioner was paroled into the United States as a refugee or about

[1] … Operation Allies Refuge was the "largest non-combatant evacuation operation in American history." Secretary of the Air Force Public Affairs, *In reflection: A look back at Operation Allies Refuge* (Aug. 25, 2022) [available at https://www.af.mil/News/Article-Display/Article/3139085/in-reflection-a-look-back-at-operation-allies-refuge]. … "On August 29, 2021, President Biden directed the Department of Homeland Security (DHS) to lead and coordinate ongoing efforts across the federal government to support vulnerable Afghans, including those who worked alongside [the United States military forces] in Afghanistan for the past two decades, as they safely resettle in the United States. …" Department of Homeland Security, *Operation Allies Welcome* (archived

September 9, 2021. (ECF No. 19 at 1, 3; ECF No. 13-1 at 1). Respondent asserts Petitioner's grant of humanitarian parole was not to "exceed" September 7, 2025. (ECF No. 13-1 at 1). Petitioner asserts his "immigration case was rejected by an immigration judge between 2022 & 2023." (ECF No. 1 at 6).

On June 2, 2025, Petitioner was arrested by the Phoenix Police Department on two charges of assault and aggravated assault. (ECF No. 19 at 3). Immigration and Customs Enforcement lodged an immigration detainer with the Maricopa County Sheriff's Office ("MCSO") that same day. (ECF No. 13 at 1).

On November 7, 2025, MCSO transferred custody of Petitioner to the United States Department of Homeland Security and Petitioner was served with a Notice to Appear charging him with being removable from United States pursuant to § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act, i.e., as a noncitizen who at the time of application for admission was not in possession of a valid entry document and a valid unexpired passport or other suitable travel document. (ECF No. 13 at 1-2). Respondent asserts that on November 26, 2025, an Immigration Judge ("IJ") "conducted

---

> content at dhs.gov) [available at https://www.dhs.gov/archive/operation-allies-welcome]. "The U.S. government is working around the clock to conduct the security screening and vetting of vulnerable Afghans before they are permitted entry into the United States, consistent with the dual goals of protecting national security and providing protection for our Afghan allies. … DHS, in coordination with interagency vetting partners, takes multiple steps to ensure that those seeking entry do not pose a national security or public safety risk. DHS deployed approximately 400 personnel from U.S. Customs and Border Protection (CBP), U.S. Immigration and Customs Enforcement … to conduct processing, screening, and vetting in coordination with … other federal agencies, and to conduct interviews as needed, with the goal of bringing to the United States Afghan nationals who worked for the United States, as well as other vulnerable Afghans." … Afghan citizens [footnote omitted] resettled in the United States were initially paroled into the United States "on a case-by-case basis, for humanitarian reasons, for a period of two years." *Id.*; *see also generally* 8 U.S.C. § 1182(d)(5)(A) (allowing for parole "on a case-by-case basis for urgent humanitarian reasons or significant public benefit").

(ECF No. 19 at 1-3).

an initial hearing in Petitioner's case and continued the case on three occasions." (ECF No. 13-1 at 2).

On December 15, 2025, ICE returned Petitioner to the custody of the MCSO. (*Id.*). On January 7, 2026, pursuant to a plea agreement, Petitioner was convicted by a state court on one count of assault and given a suspended sentence of ninety (90) days in jail. (*Id.*; ECF No. 19 at 3).[2] Petitioner was tranferred back to ICE custody on January 8, 2026. (ECF No. 13-1 at 2).

On January 13, 2026, an IJ ordered Petitioner be removed from the United States to Mexico, or in the alternative to Afghanistan. (*Id.*). Petitioner did not appeal this decision to the Board of Immigration Appeals and the order of removal became final on February 12, 2026. *See* 8 U.S.C. 1101(a)(47)(B)(ii); 8 C.F.R. § 1241.1(c). Petitioner has been detained by ICE for five months and one week since the order of removal became final.

**II. Claims for Relief**

Petitioner contends his detention has become unreasonable and unlawful pursuant to the United States Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (ECF No. 1 at 6). Petitioner asserts he has "provided all necessary cooperation to ICE agents to deport me to Afghanistan. However, due to the Taliban terrorist government's lack of cooperation with countries around the world, especially the USA, no progress has been made in my deportation." (*Id.*). Petitioner seeks release from detention, noting he has a congenital heart condition and that his wife is a United States citizen. (ECF No. 1 at 6-7). Petitioner also asserts he has other family who are United States ctizens. (ECF No. 1 at 7).

On April 29, 2026, the Court ordered Respondent to answer the petition within 20 days of the date of service. (ECF No. 3). The order requiring an answer states: "Any

[2] Pursuant to the publicly available Maricopa County Superior Court docket, on October 29, 2025, Petitioner pled guilty to a reduced charge of assault and another charge was dismissed. This record states that on January 8, 2026, Petitioner was sentenced to a term of probation. *See* https://www.superiorcourt.maricopa.gov/docket/CriminalCourtCases/caseInfo.asp?caseNumber=CR2025-123069.

response must be supported by *documentary evidence* including, if applicable, affidavits signed under penalty of perjury by individuals with *personal knowledge of the factual statements* made therein." (ECF No. 3 at 2) (emphasis added). Service was executed on Respondent on May 4, 2026 (ECF No. 7) and, accordingly, an answer was due May 20, 2026. On May 27, 2026, the Court allowed Respondent until June 1, 2026, to show cause for the failure to timely answer the Petition. (ECF No. 8). A response to the order to show cause was docketed June 1, 2026, and the order to show cause was deemed satisfied. (ECF Nos. 10 & 11).

A response to the Petition was docketed on June 5, 2026. (ECF No. 13). Respondent asserts the six-month period of post-removal-order detention found by *Zadvydas* to be a reasonable time for a noncitizen to be detained pending their removal has not yet expired, and that Petitoner's removal is likely in the reasonably foreseeable future. Respondent argues:

> … Petitioner has been detained under a final order for four months, twenty-four days, and remains in the presumptively reasonable period of detention. *Zadvydas*, 533 U.S. at 701. Although it appears Petitioner may bring an action prior to the end of the presumptively reasonable period, the burden is much higher to show that the detention is unreasonable. Even if held Petitioner for six months, Petitioner may only be granted release from detention if he can show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

(ECF No. 13 at 3).

Attached to the Response to the Petition is the affidavit of a Deportation Officer ("DO"), who avers they are "authorized to search records relating to detainees." (ECF No. 13-1 at 1). The DO states their declaration is made "based on [their] role and knowledge of Mr. Akin's file which contains electronic data including case records," and that the facts stated in the affidavit "were obtained by [their] review of the file." (*Id.*). Based on the DO's affidavit, Respondent describes the actions taken to effect Petitioner's removal, i.e., on January 27, 2026, a "Supervisor Detention and Deportation Office noted that Mexico refused to accept Petitioner; and on February 3, 2026, ICE officers submitted

a "Certificate of Identity to a Detention and Deportation Officer in an attempt to remove Petitioner to Afghanistan." (ECF No. 13 at 2). Respondent also asserts that on March 17, 2026, "ICE officers submitted a travel letter to the U.S. Mission Afghanistan in Doha, Qatar." (*Id.*). Finally, Respondent contends: "ICE has routinely been obtaining approval for removal of Afghan citizens by the Afghani government." (*Id.*).[3]

Petitioner's counsel notes the Response does not comply with the Court's directive to supply evidence to support the facts averred in the Response. (ECF No. 19 at 4).

Petitioner asserts:

> … [DO] Carbrera's declaration makes plain that he does not have personal knowledge of the factual statements in his declaration. The facts he included, he said, were "obtained by my review of the file." (Dkt. #13-1 at 1 ¶ 2) And he said that his declaration merely "sets forth a true and correct summary of the information available regarding facts alleged in the petition." (Dkt. #13-1 at 1 ¶ 3)…
>
> The government has not complied with the directive in the Court's order of April 29, 2026, respecting the evidence that must accompany any answer to the petition. Under 28 U.S.C. § 2243, when a court directs a habeas respondent to answer the petition, the respondent must "make a return certifying the true cause of the detention." The Court's April 29 order echoes this statutory directive.
>
> But the government did not heed it. The only evidence it provided to support its response is Mr. Cabrera's declaration. Mr. Cabrera does not have personal knowledge of any of the facts in his declaration. He admitted that the declaration was a "summary" of his "review of the file." He strongly implied that he does not have any personal knowledge of four critical assertions:
>
> 1. "On January 27, 2026, a Supervisory Detention and Deportation Officer (SDDO) in Eloy, Arizona noted that Mexico refused to accept Petitioner." That is not Mr. Cabrera's job title.
> 2. "On February 3, 2026, ICE officers submitted Certificate of Identity, Form I-269, to a Detention and Deportation Officer (DDO), in an attempt to remove Petitioner to Afghanistan." Mr. Cabrera does

[3] None of the assertions in the affidavit at ECF No. 13-1 are supported by documentary evidence such as a document specifying an end date for Petitioner's grant of humanitarian parole, or the Notice to Appear, or any record of a hearing before an Immigration Judge on an application for asylum or the charge of removability stated in the Notice to Appear, or the final order of removal. Nor is there any document provided supporting Respondent's assertions regarding any efforts to remove Petitioner to Mexico or Afghanistan.

> not say who these officers were, nor does he say that he personally submitted this document to another ICE officer.
>
> 3. "On March 17, 2026, ICE officers submitted a travel letter to the U.S. Mission Afghanistan in Doha, Qatar, in an attempt to remove Petitioner to Afghanistan." Mr. Cabrera again does not say who these officers were, nor does he say that he personally submitted this document to the U.S. Mission. Nor does he explain what this mission is, why the fact that it is located in Qatar rather than Afghanistan is relevant, or why the document was not submitted to any representative of the Afghan government.
>
> 4. "ICE has been routinely obtaining approval for removal of Afghanistan citizens by the Afghan government." Mr. Cabrera again does not say how he has personal knowledge of this fact. Nor does this assertion shed any light on the likelihood of Mr. Akin's removal from the United States. …

(ECF No. 19 at 4-5). Petitioner further contends:

> Mr. Cabrera's declaration thus is not admissible evidence, because it is not based on his personal knowledge. *See* Fed. R. Evid. 602. At best, it reflects his personal knowledge of whatever "file" he reviewed. But he does not explain that the events he describes actually occurred or are accurately reflected in the "file" or his "summary" thereof. Thus it is inadmissible hearsay, violates the best evidence rule, and relies on evidence that has not been authenticated. *See* Fed. R. Evid. 802, 1002, 602, 901. This declaration does not amount to any competent evidence that satisfies § 2243. *See* Order at 4, *Mirzakhil v. Rokosky*, No. 2:26-cv-3491 PHX-AMM (JFM) (D. Ariz. Jul. 1, 2026) (Dkt. #22)[4] [hereinafter "*Mirzakhil* Order"] (distinguishing

---

[4] *Mirzakhil* also involved a petitioner admitted to the United States as a refugee from Afghanistan in 2021, who had thereafter been convicted of a misdemeanor. Relief in that matter was granted July 1, 2026, on the merits of the petitioner's *Zadvydas* claim. With regard to the adequacy of the Government's response to the petition, Judge Martinez stated:

> For decades, courts have required that at least some competent evidence must be provided in a response to satisfy § 2243. *See e.g.*, *Garcia v. Boldin*, 691 F.2d 1172, 1178-79 (5th Cir. 1982) (finding that response providing "a certified record of the administrative hearings which showed the true cause of detention and which substantially answered the factual allegations of the petition" to "substantially compl[y] with 28 U.S.C. § 2243"); *Marslin v. Schmucker*, [89 F.2d 765, 767] (4th Cir. 1937) (finding that response providing "a full and complete transcript of the entire record upon which the warrant of deportation was issued" to satisfy former 28 U.S.C. §§ 456, 457, and 458, now combined as 28 U.S.C. § 2243). A declaration providing only a summary of available facts allegedly contained in an undescribed file presented by a declarant lacking personal knowledge cannot be said to be sufficient to satisfy the requirements of § 2243,

> *Garcia v. Boldin*, 691 F.2d 1172, 1178-79 (5th Cir. Unit A 1982); *Marslin v. Schmucker*, 82 F.2d 765, 767 (4th Cir. 1937)). This defect in the government's presentation is fatal to its attempt to defend Mr. Akin's detention, and the petition can be granted for that reason alone. *See Mirzakhil* Order at 4 (citing 28 U.S.C. §§ 2241(c)(1), 2243). …
>
> … Mr. Akin has provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. … the government admits that Mexico has refused to accept him for removal. Mr. Akin did allege in his petition that because of the "Taliban terrorist government's lack of cooperation with countries around the world, especially the USA, no progress has been made in my deportation" to Afghanistan. (Dkt. #1 at 6) This assertion, which the government does not refute, meets Mr. Akin's "good reason to believe" burden under *Zadvydas*. *See Ahmadzai v. Mullin*, No. 3:26-cv-2641[], 2026 WL 1333753, at *2 (S.D. Cal. May 13, 2026); *Msharif v. Hernandez*, No. 2:26-cv-1121[], 2026 WL 1256140, at *2 (W.D. Wash. May 7, 2026); *Jalili v. Semaia*, No. 5:26-cv-1703[], 2026 WL 1084739, at *3 (C.D. Cal. Apr. 16, 2026); *Mirzakhil* Order at 4. Under *Zadvydas*, the burden thus shifts to the government to respond with "evidence sufficient to rebut" Mr. Akin's "good reason to believe" showing. 533 U.S. at 701. But the government has failed to carry this burden. Mr. Cabrera's declaration says nothing about what ICE is doing to remove Mr. Akin to Afghanistan. All he describes is that one ICE officer sent a form to another ICE officer, and that a third ICE officer sent a letter to another agency of the U.S. government that is located in a country that is not Afghanistan. Nor does the fact that "ICE has been routinely obtaining approval for removal of Afghanistan citizens by the Afghanistan government" say anything specific about the likelihood of removing Mr. Akin to that country—either by the U.S. or Afghan governments. *See Senor v. Barr*, 401 F. Supp. 3d 420, 431 (W.D.N.Y. 2019) ("The government observes that many other individuals have been removed to Haiti. That might well be true, but it sheds little light on why Senor's removal has been delayed and what that means for Senor's prospects for removal occurring in the reasonably foreseeable future."); *Ahmadzai*, 2026 WL 1333753, at *3 …. Moreover, Respondents don't contest Petitioner's assertion—and the cases in support—that Afghanistan is not accepting return of its nationals."); ... *Mirzakhil* Order at 5.

(ECF No. 19 at 5-7).

---

> and is facially noncompliant with the Court's May 21, 2026 Order to Show Cause. Such a response is deficient as a matter of law, and the Petition can thus be granted on this basis alone. 28 U.S.C. §§ 2241(c)(1), 2243.

*Mirzakhil v. Rokosky*, 2:26-cv-03491-AMM, ECF No. 22 at 4.

**III. Analysis**

Petitioner argues that his detention is unlawful under *Zadvydas* because his removal is not "reasonably foreseeable." In *Zadvydas* the Supreme Court held that a person who has lawfully entered the United States and is subject to a final order of removal cannot be held indefinitely under the discretionary authority of 8 U.S.C. § 1231(a)(6). *See* 533 U.S. at 682. The Supreme Court noted that § 1231(a)(2) mandates detention for a 90-day period after an order of removal becomes final. The Supreme Court further noted that, after this 90-day period, the government "may" detain the noncitizen or release them pursuant to § 1231(a)(6). *Id.* at 683,

The *Zadvydas* Court read § 1231(a)(6) to implicitly limit a noncitizen's post-removal detention to "a period reasonably necessary to bring about that [noncitizen's] removal from the United States," and held that the statute did not permit "indefinite detention." *Id.* at 689. The Supreme Court established a presumption that after six months a noncitizen's detention is unauthorized by the statute if there is "no *significant likelihood* of removal in the *reasonably foreseeable* future." *Id.* at 701. The Supreme Court concluded that, after the six-month post-removal order period, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* The *Zadvydas* Court tasked the federal district courts with determining "whether the detention in question exceeds a period reasonably necessary to secure removal." 533 U.S. at 699. The Supreme Court advised that "if removal is not reasonably foreseeable, the [federal district] court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699-700.

Petitioner's order of removal was entered on January 13, 2026, and became final on February 12, 2026, when the time for appealing the order expired. Accordingly, the six-month period of detention found presumably reasonable under *Zadvydas*, which includes the 90-day period of mandatory detention, *see Kim Ho Ma v. Ashcroft*, 257 F.3d 1095, 1102 n.5 (9th Cir. 2001), concludes in 20 days, on August 12, 2026. However, a

*Zadvydas* claim is not categorically barred prior to the expiration of the presumptively reasonable six-month period of detention; numerous federal district courts have determined that *Zadvydas* provides only for a rebuttable presumption that, prior to expiration of the six-month post-removal period, the noncitizen's detention is reasonable. *See Serpas v. Simon*, ___ F. Supp. 3d ___, 2026 WL 1244544, at *4 (E.D. Va. Feb. 3, 2026); *Abramian v. Bondi*, 820 F. Supp. 3d 1050, 1057-58 (C.D. Cal. 2026); *Ndandu v. Noem*, 819 F. Supp. 3d 1155, 1159-60 (S.D. Cal. 2026) ("Multiple district courts have found that the six-month presumption is rebuttable"); *Cruz Medina v. Noem*, 794 F. Supp. 3d 365, 375 (D. Md. 2025); *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 396 (D.N.J. 2025); *Trinh v. Homan*, 466 F. Supp. 3d 1077, 1092-93 (C.D. Cal. 2020); *Sweid v. Cantu*, No. 25-cv-03590, 2025 WL 3033655, at *3 (D. Ariz. Oct. 30, 2025); *Jiang v. Genalo*, No. 26-cv-2402, 2026 WL 1413915, at *4 (E.D.N.Y. May 20, 2026); *Huynh v. English*, No. 26-cv-300, 2026 WL 1074054, at *3 (N.D. Ind. Apr. 17, 2026) ("Perhaps the mere fact that Mr. Huynh remains within the presumptively reasonable period set by law would be enough for some to deny his petition outright, though one would need to wrestle first with the Supreme Court's conscious choice and repeated use of the word "presumption" throughout *Zadvydas* first."); *Vijdani v. Mattos*, No. 25-cv-02496, 2026 WL 560209, at *4 (D. Nev. Feb. 27, 2026); *Wana v. Bondi*, No. 25-cv-02321, 2025 WL 3628634, at *3 (W.D. Wash. Dec. 15, 2025); *Zavvar v. Scott*, No. 25-cv-2104, 2025 WL 2592543, at *5 (D. Md. Sept. 8, 2025). "[T]he presumption scheme [set forth in *Zadvydas*] merely suggests that the burden the detainee must carry within the first six months of post[-]order detention is a heavier one than after six months has elapsed." *Cesar v. Achim*, 542 F. Supp. 2d 897, 903 (E.D. Wisc. 2008).[5]

---

[5] Moreover, the [Supreme] Court's justification [in *Zadvydas*] for the first presumption—that detention for up to six months after the beginning of the removal period is lawful—rests explicitly upon the narrow ground that the Executive Branch, because of its knowledge and expertise, is in a better position than the courts in the early stages of the removal process to determine what is or is not reasonably foreseeable removal and what administrative steps are necessary to effect removal. [] Assuming the validity of such justification, it does not follow

Petitioner contends that due to the "Taliban terrorist government's lack of cooperation with countries around the world, especially the USA, no progress has been made in [his] deportation" to Afghanistan., noting the Taliban has not cooperated with the United States government to provide travel documents. (ECF No. 1 at 6). Petitioner has met his burden of demonstrating there is no significant likelihood of removal in the reasonably foreseeable future. *See Agake v. Blanche*, No. 2:26-cv-01030, 2026 WL 1431091, at *4 (D. Nev. May 21, 2026). *Cf. Ahmadzai v. Mullin*, No. 26-cv-2641, 2026 WL 1333753, at *2 (S.D. Cal. May 13, 2026) (holding a petitioner challenging their continued detention shortly past the six-month period had met their burden by arguing the government would not be able to remove him to Afghanistan, only one ICE agent had discussed the matter with the petitioner and given him "no indication" that the petitioner would be repatriated, and noting the government does not recognize the Taliban as the government of Afghanistan, and the petitioner asserted "it is unlikely the Taliban is accepting return of Afghan nationals from the United States."). In addition to Petitioner's allegations the Court may take judicial notice of the numerous recent cases considering the removal of an Afghani national to Afghanistan at this time, wherein the federal district courts have concluded the United States government has not been able to establish a likelihood of removal of a noncitizen to Afghanistan in the reasonably foreseeable future. *See Mohmand v. Sage*, No. 26-cv-01155, 2026 WL 1859350, at *4 (M.D. Pa. June 29, 2026);[6] *Ahmadzai*, 2026 WL 1333753, at *2;[7] *Msharif v. Hernandez*,

---

> that all situations involving detention pursuant to § 1231(a)(6) implicate foreign policy and administrative expertise. Where the analysis drifts out of that realm, the justification for the presumption no longer applies.

*Cesar v. Achim*, 542 F. Supp. 2d 897, 903-04 (E.D. Wis. 2008).

> [6] … the fact of the current diplomatic relationship between the United States and Afghanistan precludes Respondent from meeting their burden of establishing that Petitioner's removal is not significant likely in the reasonably foreseeable future.
>
> The government presents no evidence that receiving travel documents from the Taliban-led government of Afghanistan is possible and removal is not reasonably foreseeable. *See Wazir*, 2026 WL 1122610, at *3. Accordingly, Mohmand's petition for habeas corpus is GRANTED. (Doc. 1).

*Mohmand v. Sage*, No. 26-cv-01155, 2026 WL 1859350, at *4 (M.D. Pa. June 29, 2026).

No. 26-cv-1121, 2026 WL 1256140, at *2 (W.D. Wash. May 7, 2026);[8] *Jalili v. Semaia*, No. 26-cv-1703, 2026 WL 1084739, at *3 (C.D. Cal. Apr. 16, 2026); *Vijdani*, 2026 WL 560209, at *4. *See also Mirzakhil v. Rokosky*, 2:26-cv-03491-AMM, ECF No. 22 at 4. ("There is no current system for removing Afghan nationals back to Afghanistan, given that the United States does not recognize the Taliban government.").[9]

Respondent contends that Petitioner fails to meet his burden of showing his removal is not forseeable, citing cases where the burden was met because the noncitizen demonstrated "no country would agree to accept" them, or that the nonticitizen's "home country [had] no repatriation treaty with the United States …" (ECF No. 13 at 3).

---

> [7] Petitioner has been detained for just over six months since his November 10, 2025 order of removal and argues that Respondents will not be able to remove him to Afghanistan because only one ICE agent has briefly discussed the matter with him and given him no indication that Afghanistan has accepted Petitioner for return. *See* ECF No. 1 at 3. Further, Afghanistan is in turmoil under Taliban rule, and the United States does not recognize the Taliban as the government of Afghanistan, such that there is no United States Embassy in Afghanistan. *See id.* at 4. More fundamentally, Petitioner posits that it is unlikely the Taliban is accepting return of Afghan nationals from the United States. *See … also Samir v. Wolf*, 2026 WL 817240, at *2 (W.D. La. Mar. 2, 2026); *Yunsai v. Bondi*, 2026 WL 895627, at *2-3 (W.D. Tex. Mar. 30, 2026) …

*Ahmadzai v. Mullin*, No. 26-cv-2641, 2026 WL 1333753, at *2 (S.D. Cal. May 13, 2026).

> [8] Further, Petitioner's evidence showing that ICE has not been able to effect Petitioner's removal to Afghanistan for reasons such as (1) Afghanistan is now a country governed by the Taliban, an organization the United States has designated as a Specially Designated Global Terrorist ("SDGT") entity, and the United States has no diplomatic ties with the Taliban, Dkt. 1 ¶ 21; and (2) data published in April 2026 shows that only 9% of all Afghan removals since 2022 have actually been removed to Afghanistan, while the remaining 91% were removed to third countries, such as Canada, Dkt. 8 at 3, "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

*Msharif v. Hernandez*, No. 26-cv-01121, 2026 WL 1256140, at *2 (W.D. Wash. May 7, 2026).

[9] The Court may take judicial notice of a "Do not travel" advisory issued February 20, 2026, by the U.S. Department of State, advising U.S. citizens and dual citizens not to travel to Afghanistan "for any reason," and and urging those in Afghanistan to "leave immediately." https://travel.state.gov/en/international-travel/travel-advisories/afghanistan.html., last visited July 17, 2026. The advisory makes clear that the Taliban is in control of Afghanistan and governmental operations there, and that individuals "who previously supported the United States in Afghanistan may [] be targeted for detention" by the Taliban.

Respondent contends, without providing any specifics as to the supportability of this contention, that "Petitioner's removal is practically attainable, and his detention is not 'potentially indefinite.'" (ECF No. 13 at 3-4). Respondent's contentions do not address whether Petitioner's removal may be effected in the *reasonably foreseeable* future, but instead merely assert removal is "practically attainable," at some indefinite time in the future. (*Id.*). It is noted that Mexico, the country to which Petitioner was ordered removed, will not accept Petitioner. Nor does Respondent allege that the United States has a repatriation treaty with Afghanistan.

Respondent's contention that Petitioner's removal is reasonably foreseeable is not substantiated by the allegations in the DO's affidavit. A statement that ICE officers submitted a Certificate of Identity to a Detention and Deportation Officer is simply insufficient to show it is significantly likely that ICE will be able to remove Petitioner to Afghanistan. Similarly, the DO's statement that ICE has "submitted a travel letter to the U.S. Mission Afghanistan in Doha, Qatar," does not indicate a significant likelihood that ICE will be able to remove Petitioner to Afghanistan in the reasonably foreseeable future; notably, as Petitioner's counsel notes, this "travel letter" not submitted to any representative of the Afghan government, and there is no explanation as to how the government of Qatar might authorize or effect Petitioner's removal to Afghanistan.

Furthermore, the now oft-repeated trope that "ICE has been routinely obtaining approval for removal of [fill-in-the-blank] citizens by the [fill-in-the-blank] government," in this matter the second "blank" being Afghanistan, is insufficient to establish removal is foreseeable. The federal courts have uniformly concluded that an immigration official's "generic" assertion that an unspecific and unquantified number of a particular nation's expatriates have been removed from the United States to that particular nation is insufficient to establish a particular petitioner's removal is significantly likely in the reasonably foreseeable future. *See*, *e.g.*, *Yousaf v. Thompson*, No. 26-cv-2190, 2026 WL 1507835, at *4-5 (W.D. Tex. May 18, 2026), *report and recommendation adopted*, No. 26-cv-190, 2026 WL 1513235 (W.D. Tex. May 29, 2026); *Wana*, 2025 WL 3628634,

at *3; *Azzo v. Noem*, No. 25-cv-03122, 2025 WL 3535208, at *3 (S.D. Cal. Dec. 10, 2025), *citing Kamyab v. Bondi*, No. 25-389, 2025 WL 2917522, at *4 (W.D. Wash. Oct. 14, 2025). As in *Alkhafaji v. Mullin*, "[a]t most, the Government's arguments and declarations here show there is at least some possibility that" the target country (in this case, Afghanistan), "will accept [the petitioner] at some point.... That is not the same as a significant likelihood that he will be accepted in the reasonably foreseeable future …." No. 26-cv-02262, 2026 WL 1862613, at *4 (S.D. Cal. June 29, 2026). Courts within the jurisdiction of the Ninth Circuit Court of Appeals "have regularly refused to find [the Government's] burden met where [the Government has] offered little more than generalizations regarding the likelihood that removal will occur." *Id.* (bracketing in original), *citing Singh v. Gonzalez*, 448 F. Supp. 2d 1214, 1220 (W.D. Wash. 2006).[10] Respondent does not contest Petitioner's assertion—and the cases cited by counsel in the Reply—that Afghanistan is not accepting return of its nationals. The Court may take judicial notice of the data cited by the Western District of Washington which directly contradicts Respondent's statement that the United States has been able to repatriate Afghani nationals:

> … data published in April 2026 shows that only 9% of all Afghan removals since 2022 have actually been removed to Afghanistan, while the remaining 91% were removed to third countries, such as Canada, Dkt. 8 at 3, "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701.

*Msharif*, 2026 WL 1256140, at *2 (W.D. Wash. May 7, 2026).

In *Phan v. Warden of Otay Mesa Detention Facility*, the government argued it had rebutted the petitioner's showing that removal was not likely in the foreseeable future because it had prepared a travel document request, translated it completely, and submitted it to ICE headquarters. *See* 813 F. Supp. 3d 1179, 1186-87 (S.D. Cal. 2025). The court

---

[10] In *Singh* the court found the government had not met its burden of showing removal was likely in the reasonably foreseeable future when it "merely assert[ed] that it has followed up on its request for travel documents," but did not provide "any substantive indication regarding how or when it expect[ed] to obtain the necessary travel document …." 448 F. Supp. 2d at 1220.

found the government failed to "proffer a substantive rebuttal" because the government "concede[d]" the document request had not been submitted to the target nation (Vietnam), and the government did not provide an estimate of when the document would be submitted to the target nation or how long it would take the target nation to respond. In *Lopez-Cacerez v. McAleenan* the court held that "[g]eneral indications that U.S. agencies have been in discussions with [the target country] regarding repatriation efforts do not indicate that those discussions will result in the timely removal of Petitioner, as it is unclear whether those efforts will be successful." No. 19-cv-1952, 2020 WL 3058096, at *6 (S.D. Cal. June 9, 2020) (citation omitted). Similarly, in *Gilali v. Warden of McHenry County Jail*, the court concluded that although the "respondent asserts that [the petitioner's] travel document requests ... remain pending and ERO continues to follow up on the documents' status," this was insufficient to establish removal was foreseeable but instead it was "merely an assertion of good-faith efforts to secure removal; it does not make removal likely in the reasonably foreseeable future." No. 19-cv-837, 2019 WL 5191251, at *5 (E.D. Wis. Oct. 15, 2019). *See also Elshourbagy v. Bondi*, 817 F. Supp. 3d 1102, 1110 (W.D. Wash. 2025) (noting "[t]here is no evidence that steps have been taken to obtain a Ugandan travel document for Petitioner, that Uganda has any interest in accepting Petitioner, or even that there has been any communication with Uganda regarding Petitioner at all"); *Ahmadi v. Bondi*, No. 26-cv-00811, 2026 WL 1123514, at *2-3 (W.D. Wash. Apr. 24, 2026) (collecting cases where the federal district court rejected the government's reliance on "generalized assertions" to meet the *Zadvydas* requirement that removal was likely in the reasonably foreseeable future). Similarly, in this case Respondent fails to make an adequate showing regarding the likelihood of Petitioner's removal in the foreseeable future.

All of the facts presented to the Court, and facts of which the Court may take judicial notice, bely any conclusion that Petitioner's removal is reasonably foreseeable. The country designated in the order of removal, i.e., Mexico, refuses to accept Petitioner. The record before the Court clearly indicates the government has not procured any travel

documents for Petitioner allowing for his removal to Afghanistan. Pending requests for travel documents do not satisfy Respondent's "burden to furnish evidence demonstrating that removal is likely in the reasonably foreseeable future." *Trejo v. Warden of ERO El Paso E. Montana*, 807 F. Supp. 3d 697, 706 (W.D. Tex. 2025). And as one federal district court recently noted, the "reality" of the United States' current ability to return any Afghani national to Afghanistan "runs through the Taliban. There are no diplomatic relations between the United States and the present theocratic regime controlling Afghanistan." *Wazir v. Attorney Gen. of U.S.*, No. 26-cv-526, 2026 WL 1122610, at *3 (M.D. Pa. Apr. 24, 2026). Petitioner has provided the Court with good reason to doubt that his removal is significantly likely in the reasonably foreseeable future. Through no fault of Petitioner's, Respondent has been unable to, and is unlikely to be able to, secure the necessary travel documents to remove him to Afghanistan. The record in this matter, and the experience of this and other federal district courts in other cases, demonstrate there is no reasonable likelihood that Petitioner can be removed to Afghanistan in the foreseeable future.

Additionally, in three weeks Petitioner's burden of rebutting the presumption that his detention is reasonable will lessen, and it is highly unlikely that at that time Respondent will be able to make any additional showing that Petitioner's removal is significantly likely in the reasonably foreseeable future. It is unlikely that some event will occur in the next several weeks to improve the relationship between the United States and Afghanistan such that Afghanistan will decide to repatriate nationals who assisted the United States in its conflict with the Taliban. *See Jalili*, 2026 WL 1084739, at *3; *Yunsai v. Bondi*, No. 26-cv-00129, 2026 WL 895627, at *2-3 (W.D. Tex. Mar. 30, 2026); *Samir v. Wolf*, No. 25-cv-01397, 2026 WL 817240, at *2 (W.D. La. Mar. 2, 2026); *Rahimi v. Semaia*, No. 26-00116, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026).

If a § 2241 petitioner's removal from the United States is not "reasonably foreseeable," the federal habeas court should find continued detention unreasonable and not authorized by United States law and order the petitioner's immediate release.

*Zadvydas*, 533 U.S. at 699–700**.** Accordingly, the Court should conclude that Petitioner's continuing detention violates the doctrine stated in *Zadvydas* and order his release.

**IT IS THEREFORE RECOMMENDED that** the Court **grant** the Petition at ECF No. 1, and order Petitioner be immediately released from confinement.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. Rule 72(b), Federal Rules of Civil Procedure, provides that the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Pursuant to Rule 7.2(e)(3) of the Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed ten (10) pages in length. Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues. *See United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Dated this 22nd day of July, 2026.

Camille D. Bibles
United States Magistrate Judge